UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FERRIS CLARK SR.,                                        CIVIL ACTION

VERSUS                                                   NO. 12-411

PHI, INC., BELL HELICOPTER TEXTRON                       SECTION: C (5)
INC. and ALLIANZ GLOBAL
CORPORATE & SPECIALTY AG

ORDER AND REASONS

This matter comes before the Court on motion for summary judgment filed by defendants, PHI, Inc. and Allianz Global and Specialty AG, (collectively "PHI"), the owner and operator of the helicopter involved in the accident made the subject of this litigation.  Rec. Doc. 81.   Having reviewed the record, the memoranda of counsel and the law, the Court rules as follows.

**I. Factual Background and Procedural History**

The plaintiff brought suit against defendants for injuries sustained during an accident on March 24, 2011 that occurred when PHI's helicopter attempted to take off from an oil platform in the Gulf of Mexico that was owned and operated by Defendant Energy XXI. The parties do not dispute the basic facts of the accident. When PHI's pilot lifted off northward, in the direction of the platform's compressors and venting boom,

the helicopter's engine compressor stalled after and due to ingesting gas that was being released from the platform. After the helicopter cleared the platform, there was a loud bang, and the helicopter descended. The helicopter's pilot engaged a flight system or process known as "autorotation" and activated the vehicle's flotation device. The helicopter landed in the water and inverted, submerging the plaintiff underwater.

In his complaint, the plaintiff seeks damages from PHI for alleged negligence of itself and its pilot in the use, maintenance, and operation of the helicopter at issue, including the pilot's decision to take flight northward in the direction of the platform's compressor and venting boom. The plaintiff has also alleged that Energy XXI negligently vented gas from the platform's venting boom, failed to inspect the platform's equipment, and failed to warn the platform's helipad users of the hazardous gas conditions on the platform.

**II.    Standard of Review**

Summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Regardless of whether it bears the burden of proof at trial, the party seeking summary judgment "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is satisfied, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324. Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III. Analysis

In the instant motion, PHI argues that summary judgment is appropriate as to three isues: (A) whether Energy XXI was negligent in failing to warn PHI and its pilot regarding the intentional or known venting of gas; (B) whether Energy XXI's negligence supersedes any negligence by PHI in inspecting, servicing, or operating its helicopter; and (C) whether PHI's pilot's decision to fly over the north side of the platform was negligent. For the reasons that follow, this Court denies summary judgment on all three issues.

*(A) Energy XXI's Negligence*

To establish the negligence of any party under maritime law, one must

"demonstrate that there was a duty owed by [the party to another], breach of that duty, injury sustained by [the other], and a causal connection between the [the party's] conduct and [the other's] injury.' " *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010). Under maritime law, parties generally owe a duty of ordinary care to one another. *Id.* Although the existence of a duty is a question of law, the determination that a particular duty bound a party to a particular course of action is a fact-bound inquiry; it must be based on findings of facts regarding the circumstances surrounding the alleged negligent acts or omissions, as well as the injury sustained. *See Nunley v. M/V Dauntless Colocotronis*, 727 F.2d 455, 463 (5th Cir. 1984) (breach of duty "must take into account consideration all of the relevant circumstances and is a finding of fact to be made by the district court in the first instance"); *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980) ("A determination of the reasonableness of [one party's] failure to warn [another] requires an examination of all the circumstances surrounding the injury."); *id.* ("The degree of care necessary to constitute the ordinary care required of a person upon any particular occasion is measured by reference to the circumstances of danger and risk known to such person at the time. Conduct which will be considered extremely careful under one condition of knowledge, and one state of circumstances, may be grossly negligent with different knowledge and in changed

circumstances.") (citing 57 Am.Jur.2d Negligence § 72 (1971), at 423).

The duty to warn urged in this summary judgment brief depends on PHI's contention that Energy XXI was knowingly performing maintenance on its compressor which required the release of methane gas without issuing any warning to PHI's pilot.[1] PHI points to the testimony of its expert, Douglas Stimpson, who claims that the venting of Methane was a necessary part of ongoing repairs to the number 1 compressor on the platform at the time of takeoff.  Rec. Doc. 81-5,  4. However, Energy XXI's foreman, Jerry Lott, and lead compressor operator, David Martin, both directly dispute the notion that the number 1 compressor was under repair or that it was being serviced in a way that would result in abnormal venting. Rec. Docs. 100-6, 100-7. Even if they had not so declared, PHI's motion would still fail on this issue.  In asserting that compressor maintenance was an undisputed cause of the methane at issue in this case, PHI only points to expert testimony summarizing the statements of Energy XXI employees. The Court may not consider hearsay imbedded in declarations and affidavits to dispose of a motion for summary judgment. *Martin v. John W. Stone Oil*

---

[1]The Court confines itself to the argument actually raised by PHI in its motion for summary judgment, i.e., that failing to issue warnings was negligent specifically because venting of methane was intentional at the time it occurred. It does not consider the argument that Energy XXI's failure to install a warning system that illuminates whenever venting occurs is negligent, even if the venting is, as Energy XXI claims, unpredictable and incidental to normal functioning. This latter argument has not been raised in the summary judgment brief.

5

*Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). Thus, PHI fails to introduce any competent evidence that the Energy XXI intentionally vented methane and the motion for summary judgment must fail on this issue.

 *(B) Superseding Cause/Negligence*

 PHI contends that insofar as Energy XXI is found to be negligent for failing to warn regarding the venting of gas, the latter's negligence would necessarily supersede any of former's negligence prior to its pilot's takeoff, including faulty maintenance of its helicopter or training of its pilot. Notably, PHI does not, by this argument, challenge the plaintiff's ability to prove by competent evidence that it behaved negligently in some way before Energy XXI negligently failed to issue warnings regarding the venting of gas. The oppositions filed by Energy XXI and the plaintiff have not responded to this particular argument, focusing instead on the negligence of PHI's pilot in navigating the helicopter.

 Superseding negligence will absolve prior negligence in a maritime case only when the prior actor could not have "reasonably anticipated" the negligence of the subsequent actor. *Nunley*, 727 F.2d at 467. Embracing the wisdom of the Restatement (Second) of Torts, the Fifth Circuit has set forth several criteria for determining whether external force should be deemed intervening or superseding. *Id.* at 464-465. Of

particular relevance to this motion, is the court's statement:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Id.*

Thus, the Court's determination of whether PHI should have foreseen the alleged negligence of Energy XXI in its platform design or maintenance when it was maintaining its own helicopter or training its pilot depends in part on the nature of Energy XXI's negligent act or omission and whether it was "highly extraordinary." As the analysis above demonstrates, material issues of fact surrounding Energy XXI's negligence are genuinely in dispute. Given the breadth of acts and omissions by PHI alleged by the plaintiffs to have negligently preceded Energy XXI's venting, and the active dispute regarding the circumstances of the venting and the extent to which a

warning was feasible, the Court declines to embrace as a matter of law the abstract proposition that any negligence by PHI before the flight in question was superseded by Energy XXI's failure to warn, even if proven negligent.

*(C) PHI's Pilot's Negligence*

Lastly, PHI argues that there is no evidence that its pilot was negligent after the helicopter took flight. The plaintiff has alleged that PHI's pilot breached a duty of care to avoid the flight path it chose off of the vessel. PHI counters that its pilot had no such duty because he did not and could not know that the platform was actually venting gas from the proximity of the boom vent and the compressors. However, this argument ignores the fact that a duty may arise not only from its pilot's awareness of venting but also from his awareness of the risk of venting. Pilots have a duty to avoid such hazards that they could or should be able to perceive. *See Black v. United States*, 441 F.2d 741, 744 (5th Cir. 1971). The plaintiff has come forward with evidence tending to establish the pilot's awareness of this risk, in particular, the deposition testimony of the pilot and PHI's chief pilot to the effect that the pilot received training regarding the risks of venting, and the resultant need to avoid the compressors and venting boom in the flight path. Rec. Docs. 99-2, 99-6. PHI's chief pilot also discussed a company practice of issuing alerts to pilots regarding the locations of venting booms and compressors on

platforms. Rec. Doc. 99-6, p. 86. The hazard in this case is not the gas itself, which may be odorless and undetectable, but the venting boom and compressor from which the gas emanates. Therefore, this argument cannot be sustained.

The plaintiff has also alleged that PHI's pilot breached a duty of care to properly analyze the helicopter's gauges and instruments before engaging the autorotation systems. Intellistart data gathered from the flight data recorder confirms that a compressor stall caused the helicopter to descend initially. Rec. Doc. 99-5. The pilot testified in his deposition that he did not diagnose the source of the helicopter's descent as a compressor stall, Rec. Doc. 99-2, p. 47, and further engaged autorotation based on his perception that the engine had "ceased to produce power." Rec. Doc. 99-2, p. 102. PHI's chief pilot testified that several gauges can be used to determine whether an engine is losing power. Rec. Doc. 99-6, p. 35. The pilot testified that he only noted a rise in a single instrument gauge, torque, before deciding to enter autorotation. Rec. Doc. 99-2, p. 19. He also confirmed, per one of his company's safety alerts, that high or erratic torque was a common symptom of an engine out and a compressor stall. *Id.* The foregoing provides sufficient basis for the plaintiff to argue that the pilot's actions were negligent.

The plaintiff finally complains that PHI's pilot incorrectly executed autorotation

9

by failing to roll off the throttle when lowering the collective pitch control. The chief pilot testified in his deposition that he believed the pilot executed this maneuver incorrectly and that as a result the helicopter rolled after contact with the water. Rec. Doc. 99-6, p. 50. Breach of the pilot's training can be thus inferred.

**IV. Conclusion**

Accordingly, IT IS ORDERED that PHI's motion for summary judgment is DENIED. Rec. Doc. 81.

New Orleans, Louisiana, this 2nd day of October, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE